UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZIA-UR-RAHMAN, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> ROBERT GATES, *et al.*, <br><br> Respondents. | No. 10-cv-320 (JSG) |

**PETITIONER'S RESPONSE TO RESPONDENTS' NOTICE TO THE COURT REGARDING NEW STATUTE**

Petitioner respectfully submits this response to Respondents' notice of the recently-enacted National Defense Authorization Act for Fiscal Year 2012 ("NDAA"), Pub. L. No. 112-81, 125 Stat. 1298 (2012). *See* Notice to Ct. Regarding New Statute ("Gov't Notice"), ECF No. 31. The NDAA has no bearing on the jurisdictional question in the instant litigation and its passage should not delay the Court's adjudication of the pending petition. The government does not claim that any new procedures under the NDAA will apply to Petitioner, *see* Gov't Notice at 2, and it is uncertain that NDAA § 1024 will apply to him in the future. Respondents' own filing therefore makes clear that Section 1024 does not currently affect Petitioner. Therefore, Petitioner respectfully asks that the Court not delay resolving Respondents' pending Motion to Dismiss.

Section 1024 provides that within 90 days of the enactment of the NDAA, the Secretary of Defense "shall submit . . . a report setting forth the procedures for determining the status of persons . . . who will be held in long-term detention under the law of war pursuant to the Authorization for Use of Military Force." NDAA § 1024(a)–

(b). By its terms and based on its legislative history, Section 1024 is prospective, and application of any new status-determination procedures to Petitioner is speculative, at best. Section 1024 therefore offers no basis to delay the Court's adjudication of the threshold jurisdictional inquiry.

Section 1024 directs the creation of procedures to be applied to "persons . . . who *will be* held in long-term detention." NDAA § 1024(a)–(b) (emphasis added). The Conference Report also describes Section 1024 as "prospective," and authorizes the Secretary of Defense "to determine the extent, if any, to which such procedures will be applied to detainees for whom status determinations have already been made prior to the date of the enactment of this Act." H.R. Rep. No. 112-329, at 697 (Conf. Rep.).[1] In his signing statement accompanying the NDAA, the President further declares that the Secretary of Defense will enjoy "broad discretion to determine what detainee status determinations in Afghanistan are subject to the requirements of this section." Statement by the President on H.R. 1540.[2] Because Petitioner has undergone multiple status determinations "prior to the date of the enactment" of the NDAA, *see* Decl. of Robert S. Harward ¶ 16, Mot. to Dismiss Ex. 2, ECF No. 15-3, the application or relevance of Section 1024 procedures remains, at best, speculative. The hypothetical, future application of undrafted procedures is irrelevant to the current proceedings, and provides no cause for delay.

Even if procedures later promulgated by the Secretary of Defense were to apply to Petitioner, they would not adequately substitute for habeas review. Section 1024 requires

---

[1] Nat. Def. Authorization Act, H.R. Rep. No. 112-329, at 695 (2012) (Conf. Rep.), http://www.gpo.gov/fdsys/pkg/CRPT-112hrpt329/pdf/CRPT-112hrpt329-pt1.pdf.
[2] *Statement by the President on H.R. 1540*, Office of the Press Sec'y (Dec. 31, 2011), *available at* http://www.whitehouse.gov/the-press-office/2011/12/31/statement-president-hr-1540 (last visited Feb. 4, 2012).

military judges to preside at status-determination proceedings of designated prisoners and a military lawyer to be assigned to such prisoners (at their election).  NDAA § 1024(b)(1)–(2).  Neither adjudication of detention status by a military judge nor representation by a military lawyer fulfills international human rights law requirements and principles.  Under those norms, prisoners must be afforded the right to challenge their detentions before a court or an independent and impartial administrative tribunal, and access to lawyers of their choosing.  *See* International Covenant on Civil and Political Rights art. 14(1), Dec. 19, 1966, S. Exec. Doc. E, 95-2 (1978), 999 U.N.T.S. 171; Body of Principles for the Protection of All Persons Under Any Form or Detention or Imprisonment Principle 17(1), G/A Res. 43/173, U.N. Doc A/RES/43/173 (Dec. 9, 1988); Pet'rs' Opp'n to Resp'ts' Mot. to Dismiss ("Pet'rs' Opp'n") at 19–20, ECF No. 19.  A military judge answers to the U.S. military chain of command, and does not constitute an independent or impartial court or tribunal.  Similarly, provision of a military lawyer alone does not sufficiently protect prisoners' right to counsel of their own choice.

Finally, just as the Detainee Review Board ("DRB") system failed to address the fundamental flaws in the Unlawful Enemy Combatant Review Board ("UECRB") scheme that preceded it, there is little reason to think that Section 1024 procedures will remedy the deficiencies of the DRBs.  *See* Pet'rs' Opp'n at 10–16 (DRB status determinations do not provide adequate notice, cannot be appealed, prohibit access to counsel, afford limited or no opportunity to present witnesses or rebut evidence, and can be overruled by the military chain of command).

In sum, nothing in the NDAA presently affects Petitioner or the jurisdictional questions before this Court.  Possible future effects are wholly speculative and uncertain.

Petitioner has been imprisoned since 2008 without adequate due process or judicial review. In terms that speak directly to the situation at hand, the Supreme Court held that "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody." *Boumediene v. Bush*, 553 U.S. 723, 794–95 (2008). The Court should not delay these proceedings on account of the NDAA.

                          Respectfully submitted,

                            /s/ Arthur B. Spitzer
                          Arthur B. Spitzer (D.C. Bar No. 235960)
                          American Civil Liberties Union
                            of the Nation's Capital
                          4301 Connecticut Avenue, NW, Suite 434
                          Washington, DC 20008
                          Tel: (202) 457-0800
                          Fax: (202) 457-0805
                          artspitzer@gmail.com

                          Hina Shamsi
                          Nathan Freed Wessler
                          American Civil Liberties Union Foundation
                          125 Broad Street, 18th Floor
                          New York, NY 10004-2400
                          Te: (212) 284-7321
                          Fax: (212) 549-2654
                          hshamsi@aclu.org

                          Jonathan Hafetz
                          169 Hicks Street
                          Brooklyn, NY 11201
                          Tel: (917) 355-6996
                          hafetzj@yahoo.com

                          Tina M. Foster
                          International Justice Network
                          PO Box 610119
                          New York, NY 11361-0119
                          Tel: (917) 442-9580
                          tina.foster@ijnetwork.org

Dated: February 6, 2012