UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-----------------------------------------------------
                               :

HAJI ABDUL WAHID, *et al.*,          :       CASE NO. 1:10-CV-00320

                Plaintiffs,         :

                               :

vs.                               :       OPINION & ORDER
                               :       [Resolving Doc. Nos. 15, 18]

ROBERT GATES, Secretary of Defense,  :
 *et al.*,                             :

               Defendants.        :

                               :
-----------------------------------------------------

JAMES S. GWIN,[1/] UNITED STATES DISTRICT JUDGE:

        With this case, Petitioner Zia-ur-Rahman seeks a writ of habeas corpus to stop his detention at the Bagram Air Force base in Afghanistan.[2/] [Doc. 13.]  The Respondents move to dismiss and say that controlling circuit precedent in *Al Maqaleh v. Gates*, 605 F.3d 84 (D.C. Cir. 2010), shows that this Court lacks subject-matter jurisdiction.  [Doc. 15.]  Petitioner Zia-ur-Rahman opposes the Respondents' motion, [Doc. 19], and moves for leave to take jurisdictional discovery, [Doc. 18]. For the following reasons, the Court **GRANTS** the Respondents' motion to dismiss and **DENIES** the Petitioner's motion for leave to take jurisdictional discovery.

## I.  Background

        On February 26, 2010, the Petitioner—a citizen of the Islamic Republic of Afghanistan—filed

---

      [1/]The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting by designation.

      [2/]On September 7, 2010, the Court granted Haji Abdul Wahid's motion to dismiss himself as a petitioner in this action.  [*See* Doc. 10.]  Accordingly, Zia-ur-Rahman is the only remaining petitioner.

Case No. 1:10-CV-0320
Gwin, J.

a petition for habeas corpus challenging his detention by the United States military at Bagram Airfield Military Base in Afghanistan.[3/]  [Doc. 15.]  The Petitioner (through next-friend Haji Noor Saeed) alleges that the United States military captured him during a night raid of his home in December 2008 and that he "has been held for more than two years without charge, without access to counsel, and without any judicial review or independent and impartial administrative process through which he can challenge his illegal arrest and detention." [Doc. 19 at 3.]  He says he poses no threat to the United States or to the coalition forces.  [Doc. 19 at 6.]

Between May and December 2010, this case was stayed pending the decision in *Al Maqaleh*. [Docs. 8, 9.]  In December 2010, the Petitioner filed an Amended Petition alleging that the facts of his situation so materially differ from the facts in *Al Maqaleh* that the three-prong *Boumediene* analysis—as implemented in *Al Maqaleh*—favors extending the Suspension Clause[4/] to him. [Doc. 13]; *Boumediene v. Bush*, 553 U.S. 723 (2008).  The Respondents—arguing that the Court lacks subject-matter jurisdiction over the case—moved to dismiss.  [Doc. 15.]

## II.  Legal Standard

A challenge to subject-matter jurisdiction "focuses on the court's power to hear the plaintiff's claim, . . . [and] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  And "although a court must accept as true all the factual

---

[3/] The United States military maintains control of Bagram through a lease agreement with the Afghan government which grants the United States exclusive use of the base without interference from the Afghan government and which can only be terminated by the United States.  *See* [Doc. 15 at 7 (citing *Al Maqaleh*, 605 F.3d at 87).]

[4/] The Suspension Clause provides that "the privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it."  U.S. Const. art. I, §9, cl. 2.

Case No. 1:10-CV-0320
Gwin, J.

allegations contained in the complaint when reviewing a motion to dismiss[,] . . . [the] factual allegations in the complaint will bear closer scrutiny [than is involved] in resolving a 12(b)(6) motion . . . ." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations and internal quotation marks omitted).

### III.  Analysis

#### A.  The Legal Framework

With this case, this Court examines the availability of the writ of habeas corpus to noncitizens held by the United States but held beyond the sovereign territory of the United States.  Until *Boumediene v. Bush*, the writ seemed unavailable to noncitizens held outside United States territory. In *Johnson v. Eisentrager*, 339 U.S. 763 (1950), twenty-one German nationals petitioned for writs of habeas corpus challenging their post-arrest detention by the United States following Germany's surrender.  None were United States citizens, and none had been arrested or held in the United States. In *Eisentrager*, the Supreme Court held that the writ was unavailable to enemy aliens beyond the sovereign territory of the United States.  In justifying this holding, the Court noted that trial of the writ "would hamper the war effort and bring aid and comfort to the enemy." *Id.* at 779.  The Court also found that such a proceeding could fetter a field commander by diverting his attention from the overseas military offensive to the legal issues at home. *Id.*

*Eisentrager* remained controlling until a series of Court decisions and Congressional reaction to those decisions beginning with *Rasul v. Bush*, 542 U.S. 466 (2004), where the Court found jurisdiction for a habeas challenge to detention at the Guantanamo Bay Naval Base in Cuba. Reacting, Congress adopted, and President Bush signed, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2739 (2005) (codified at 28 U.S.C. § 2241(e) (2006)).  Among other

Case No. 1:10-CV-0320
Gwin, J.

things, that Act provided that "no court . . . shall have jurisdiction to hear or consider . . . an application for a writ of habeas corpus filed by . . . an alien detained by the Department of Defense at Guantanamo Bay . . . ." 28 U.S.C. § 2241(e) (2006). Then the Supreme Court decided *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), and held that the 2005 law did not strip federal courts of jurisdiction to hear petitions for writs of habeas corpus on behalf of Guantanamo detainees that were pending at the time of the law's enactment. Further responding to the *Hamdan* decision, Congress passed the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006), and closed any statutory claim of habeas jurisdiction.

In deciding this challenge to the Petitioner's detention at the Bagram Air Base and at its Bagram Theater Internment Facility, the Court examines whether it has habeas corpus jurisdiction. The Supreme Court's opinion in *Boumediene* largely controls the analysis. In *Boumediene*, the Court acknowledged that statute-based habeas jurisdiction had been ended by the Military Commissions Act. Nonetheless, the Court examined whether the Suspension Clause afforded a constitutional basis for jurisdiction irrespective of whatever statutory jurisdiction existed. *Boumediene*, 553 U.S. 723.

The Supreme Court analyzed three factors to decide whether the Suspension Clause extended to enemy aliens being held at Guantanamo Bay:

> (1) the citizenship and status of the detainee and the *adequacy of the process* through which that status determination was made, (2) the *nature of the sites* where apprehension and then detention took place, and (3) the *practical obstacles* inherent in resolving the detainees entitlement to the writ of habeas corpus.

*Id.* at 766 (emphases added).

After examining past precedent, the Court emphasized the practical effects that would run from extending habeas jurisdiction: the "common thread" uniting these precedents was "the idea that questions of extraterritoriality turn on objective factors and practical concerns, not formalism." *Id.* at

-4-

Case No. 1:10-CV-0320
Gwin, J.

764. The geographic reach of habeas corpus should employ a practical multi-factor balancing test, not a simple and categorical analysis of the location where the detention occurred. *See id.* at 751-54.

In *Boumediene*, the Court found that the Suspension Clause applied extraterritorially to the detainees because, among other factors, the review process the Guantanamo detainees received was inadequate. Perhaps more important, Guantanamo was "within the constant jurisdiction of the United States" and extending habeas jurisdiction to Guantanamo was not unduly impractical. *Id.* at 767-68.

In *Al Maqaleh*, the D.C. Circuit applied the *Boumediene* analysis to a case nearly identical to this case and found that the district court did not have habeas jurisdiction to hear a challenge to detention by three aliens detained at Bagram. *Al Maqaleh*, 605 F.3d at 99. In considering the three *Boumediene* factors, the *Al Maqaleh* court first rejected the suggestion that *Boumediene* simply required determination of *de facto* sovereignty. *Id.* at 95. Instead, the circuit used the multi-factor approach identified in *Boumediene*.

As to the first factor, the court concluded that the "adequacy of process" prong favored extending habeas jurisdiction to the Bagram detainees because they received even less review of their detention than had been afforded to the detainees in *Boumediene*. However, the *Al Maqaleh* court found the remaining two *Boumediene* prongs, and especially the third prong, weighed "heavily" in favor of the United States' position. The *Al Maqaleh* court reasoned that the "nature of the site" prong did not support extending habeas jurisdiction to the Bagram detainees because the United States maintained no sovereignty over Bagram and the United States' presence in Afghanistan was welcomed by the Afghan government. Bagram did not approximate the United States' long-standing and unending control of Guantanamo. *Id.* at 96.

-5-

Case No. 1:10-CV-0320
Gwin, J.

Similarly, the "practical obstacles" prong—the most important prong for the D.C. Circuit Court—did not favor giving habeas relief to the Bagram detainees. Afghanistan was in a theater of war, where concerns of conducting trials and issuing the writ at a facility exposed to the "vagaries of war" were present. *Id* at 97. Accordingly, the D.C. Circuit dismissed the case for lack of subject-matter jurisdiction.

### B. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In the present case, the three-step constitutional analysis that the D.C. Circuit Court used in *Al Maqaleh* controls. This decision is, therefore, compelled by the established precedent of *Al Maqaleh*—the Court concludes that the Suspension Clause does not extend to this Petitioner and that this Court has no subject-matter jurisdiction over the case. The Petitioner's newly presented facts, even when taken in the light most favorable to him, are too similar to warrant a different conclusion than that of *Al Maqaleh*.

### 1. Adequacy of Process

Because the *Al Maqaleh* court found that the "adequacy of process" prong supported the extension of the Suspension Clause to the Bagram detainees, this Court considers whether the Petitioner's facts alter the *Al Maqaleh* analysis in a way that becomes determinative. They do not.

The Petitioner spends the bulk of his Amended Petition describing the inadequacies of the current, "woefully inaccurate," review boards but does not allege that the current review process is worse than the process examined in the *Al Maqaleh* decision. [Doc. 19 at 9-22.] In fact, the Petitioner acknowledges that the current review boards are a "marginal improvement over [those in place during the *Al Maqaleh* decision]," [Doc. 19 at 8], and that "[the] procedures have all the same fundamental flaws as the D.C. Circuit identified," [Doc. 19 at 3]. Though the Petitioner and the

Case No. 1:10-CV-0320
Gwin, J.

Respondents disagree on the actual effects of the new Bagram processes, those procedures do not compel a different conclusion than *Al Maqaleh*.

Because the Petitioner makes no argument that he is differently situated than the petitioners in *Al Maqaleh* (this Petitioner is a non-U.S. citizen held as an enemy alien), this Court shares the *Al Maqaleh* conclusion: the "adequacy of process" prong weighs in [the] Petitioner's favor but is not strong enough to offset the other legs of the *Boumediene* constitutional analysis.

### 2. Nature of the Site

The *Al Maqaleh* court based its analysis of the "nature of the site" prong on the location of the detainees' apprehension, the sovereignty the United States held over the site of detention, and whether the United States was present at the location of the detention in the face of a hostile government. *Al Maqaleh*, 605 F.3d. at 97. The Petitioner does not allege that these determinative factors have changed. He does, however, quote statements made by a United States official to show the United States intends to gain the attributes of sovereignty over Bagram by occupying it indefinitely. For example, the Petitioner cites a quote from the Deputy Secretary of Defense for Detainee Policy that the United States wishes to maintain control of Bagram indefinitely, but he failed to finish the Deputy Secretary's quotation: "U.S. forces will eventually transition this additional detention capacity to the [Afghan Government] . . . ." [Doc. 15-2 at 3.]

In addition, the Petitioner's own language demonstrates the uncertainty of his position: "[the base] *may be* held indefinitely," and "[detainees] *may be* subject to indefinite detention." [Doc. 19 at 22, 25.] And the Petitioner contends the unsettled time line of transferring control of Bagram to the Afghan government is further evidence of the United States' intent to control Bagram indefinitely. [Doc. 19 at 23.]

Case No. 1:10-CV-0320
Gwin, J.

The Court recognizes certain inconsistencies about—and the unsettled nature of—the United States's intentions for Bagram.  But the lack of a certain end-date is not sufficient to extend the writ of habeas corpus to detainees.  The *Al Maqaleh* court, when criticizing a similar position, cautioned that "such an interpretation would seem to create the potential for the extraterritorial extension of the Suspension Clause to noncitizens held in any United States military facility in the world, and perhaps to an undeterminable number of other United States-leased facilities as well." *Al Maqaleh*, 605 F.3d at 95.

Indeed, in the two years since the *Al Maqaleh* holding, the relevant inquires for the "nature of the site" prong remain nearly unchanged:  the Petitioner was apprehended abroad, the United States' presence in Bagram is by permission of the Afghan government, and the United States makes no claims of sovereignty over Bagram in conflict with the Afghan government.  Put simply, the Bagram occupation still differs too greatly from the Guantanamo occupation for the 'nature of the sites' prong to weigh in the Petitioner's favor when measured against the circumstance that existed in *Boumediene*:

> The United States has maintained its total control of Guantanamo Bay for over a century, even in the face of a hostile government maintaining *de jure* sovereignty over the property.  In Bagram . . . there is no indication of any intent to occupy the base with permanence, nor is there hostility on the part of the "host" country. . . . While it is certainly realistic to assert that the United States has *de facto* sovereignty over Guantanamo, the same simply is not true with respect to Bagram.

*Id.* at 97.  Accordingly, while the Petitioner's contentions move this Court to find the "nature of the site" prong perhaps weighs less strongly in favor of the Respondents' position, this second prong still weighs against the application of the Suspension Clause to the Petitioner.

### 3.  Practical Obstacles

The third prong, the "practical obstacles" prong, most favors the Government's position that

Case No. 1:10-CV-0320
Gwin, J.

the Suspension Clause does not extend habeas corpus protection to the Petitioner.  The *Al Maqaleh* court's "practical obstacles" evaluation focused on Bagram's location in a theater of war and "in a territory under neither the *de facto* nor *de jure* sovereignty of the United States and within the territory of another *de jure* sovereign." *Al Maqaleh*, 605 F.3d at 98.  It remains true that Bagram, "indeed the entire nation of Afghanistan," is an active war zone and within the sovereign territory of another nation. *Id.* at 97.  Moreover, in closing dicta the *Al Maqaleh* court noted that while the third prong weighed overwhelmingly in favor of the United States, the prong would be even more skewed in the Respondents' favor if the petitioners had been Afghan citizens. *Id.* at 99.  Zia-ur-Rahman is just such a petitioner—he's an Afghan Citizen.

The Petitioner also points out that the United States apparently cooperated with fifty-two Afghan criminal proceedings that have occurred at Bagram using Afghan judges and Afghan prosecutors in the last two years. [Doc. 19 at 26.]  These cases provide some support for the Petitioner's argument that habeas proceedings might proceed even amidst the Afghan turmoil.  But this evidence is insufficient to distinguish the factual background of this case from the factual background the D.C. Circuit Court reviewed in *Al Maqaleh*.  If anything, the Afghan criminal proceedings support the proposition the United States government is attempting to transfer control of Bagram to the Afghan government more quickly.

As at the time of the *Al Maqaleh* decision, Bagram is in a highly active war-zone and remains under the sovereignty of the Afghan government where the same, if not more, "practical obstacles" are present.  The overwhelming weight of the "practical obstacles" prong, considered alongside the analysis of the "nature of the site" prong, lead this Court to the same conclusion of *Al Maqaleh*:  this Court does not have jurisdiction to entertain this habeas claim.

Case No. 1:10-CV-0320
Gwin, J.

### C.  Motion for Jurisdictional Discovery

The Petitioner also seeks jurisdictional discovery in several disputed areas:  (1) the adequacy of the Bagram detainee's review process as a substitute for habeas review; (2) the government's plans to hold prisoners at Bagram indefinitely and the categories of Bagram detainees who may be held indefinitely (including whether the Petitioner falls into these categories); and (3) the existence of practical obstacles standing in the way of habeas jurisdiction.  [Doc. 18 at 3-4.]

"A district court acts within its discretion to deny discovery when the plaintiff has failed to show that discovery would alter the jurisdictional analysis."  *Heroth v. Kingdom of Saudi Arabia*, 331 F. App'x 1, 3 (D.C. Cir. 2009); *cf. Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.C.C. 2004) (granting jurisdictional discovery because "if the facts alleged in the Petition were shown to be true, there would be habeas jurisdiction").

The Petitioner's requested discovery would not alter this Court's jurisdictional analysis and will therefore be denied.  First, the *Al Maqaleh* court already determined that a lesser review process was insufficient to make the writ of habeas corpus available to Bagram detainees.  605 F.3d at 96. Second, the Petitioner's request to discover proof of the United States' intention to hold Bagram and certain detainees indefinitely would also fail to alter the *Al Maqaleh* analysis.  As discussed above, indefiniteness alone will not suffice to alter the "nature of the site" analysis without also addressing other pertinent factors:  the United States does not exercise *de facto* sovereignty over Bagram, does not claim to hold sovereignty over Bagram, and is occupying Bagram with the approval of the Afghan government.  Finally, the Petitioner's request for discovery regarding Afghan civilian trials would not alter the pertinent factors in the *Al Maqaleh* analysis of the "practical obstacles" prong—namely the location of the military base in question and whether it was in a theater of

Case No. 1:10-CV-0320
Gwin, J.

war—and likewise would not alter the constitutional analysis.  In sum, Petitioner "has failed to show

that discovery would alter the jurisdictional analysis," and the Court denies his request.  *Heroth*,

*331 F. App'x at 3*.

### IV.  Conclusion

For these reasons, the Court **GRANTS** the Respondent's motion to dismiss for lack of

subject-matter jurisdiction and **DENIES** the Petitioner's motion for jurisdictional discovery.


IT IS SO ORDERED.

Dated: June 26, 2012                                    s/    *James S. Gwin*
                                                               JAMES S. GWIN
                                                               UNITED STATES DISTRICT JUDGE